IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

FARRAH L. DIDUR,

      Plaintiff,

      v.                                          Case No.  05-02188 JWL

THOMAS VIGER,

      Defendant.

## MEMORANDUM AND ORDER

This case concerns an international child abduction.  Plaintiff filed a petition for the return of her child, J.D., to Canada pursuant to the Hague Convention on the Civil Aspects of International Remedies Act (the Hague Convention), which was implemented domestically via the International Child Abduction Remedies Act (the ICARA).  This case is in fact controlled by the Hague Convention, which both Canada and the United States have ratified.  The undersigned referred the case to Magistrate Judge Waxse (the Magistrate Judge), who filed a Report and Recommendation (doc. # 29).  This matter comes before the court on Plaintiff's filed objections (doc. # 30) to the Magistrate Judge's findings concerning the "grave risk" exception.  After *de novo* review of the findings to which Plaintiff objects, the court finds that Plaintiff's petition should be denied.

## *Standard of Review*

State and federal district courts have concurrent original jurisdiction of actions arising under the Hague Convention. 42 U.S.C. § 11603(a). A person seeking a child's return may commence a civil action by filing a petition in a court in the jurisdiction where the child is physically located. *Id.* § 11603(b). As a threshold matter, the petitioner bears the burden of showing by a preponderance of the evidence that the removal or retention was wrongful. *Id.* § 11603(e)(1)(A). Upon this showing, the burden shifts to Defendant to establish an exception.

Using a Magistrate Judge to conduct a hearing is proper in this context. *See Holder v. Holder*, 392 F.3d 1009, 1022 (9th Cir. 2004) (discussing the common role of Magistrate Judges in custody cases under the Hague Convention). Although a Magistrate Judge may conduct a hearing, he "may only make proposed findings of fact and recommendations, and district courts must make *de novo* determinations as to those matters if a party objects to the magistrate's recommendations." *First Union Mortg. Corp. v. Smith,* 229 F.3d 992, 995 (10th Cir. 2000) (citing § 636(b)(1)(B), (C)). Failure to object is fatal, as the Tenth Circuit "has adopted a firm waiver rule under which a party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005) (citing *Moore v. United States,* 950 F.2d 656, 659 (10th Cir. 1991)). Thus, this court will only review those findings of the Magistrate Judge to which one of the party's has objected.

*Discussion*

Plaintiff filed her petition on May 10, 2005. On July 18, 2005, the Magistrate Judge conducted a hearing on this petition. Both parties appeared in person and with counsel, and both parties testified and presented evidence. Based on the hearing and further briefing by the parties, the Magistrate Judge determined that based on the "grave risk" exception to the Hague Convention, Plaintiff's petition should be denied. This court will now engage in a *de novo* review of the findings and conclusions to which Plaintiff objects.

*1.    Standard for "Grave Risk" Exception*

The Hague Convention, which Congress implemented through the ICARA, addressed the recurring problem of parental international child abduction. *Mozes v. Mozes,* 239 F.3d 1067, 1069-70 (9th Cir.2001); *Shalit v. Coppe,* 182 F.3d 1124, 1127 (9th Cir. 1999). Before, parents commonly were moving their children across borders "in search of a more sympathetic court" to decide their custody petitions. *Friedrich v. Friedrich,* 983 F.2d 1396, 1400 (6th Cir.1993). The Convention eliminated the motivation for this trend by mandating the prompt return of abducted children to their home land to await a custody decision. *Mozes,* 239 F.3d at 1070.

There are two legal steps in making a decision under the Hague Convention. First, the court must determine whether the child was "wrongfully removed" from his "habitual residence." If this first showing is made, the court must then determine whether an exception applies. Neither party has objected to the legal finding that J.D. was "wrongfully removed"

from his "habitual residence" in Canada, and the general rule under the Hague Convention would require the court to order J.D.'s return to Canada. Thus, the only issue before the court is whether an exception to the general rule applies.

One of these four exceptions is the "grave risk" exception, which under Article 13(b) of the Hague Convention allows a country to withhold an abducted child if "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." 19 I.L.M. at 1502. The Hague Convention's implementing legislation provides that this showing requires "clear and convincing evidence." *See id.* § 11603(e)(2)(A). Also, this exception is to be narrowly construed. *See id.* § 11601(a)(4); *see also* Elisa Pérez-Vera, *Explanatory Report: Hague Conference on Private International Law, in* 3 Acts and Documents of the Fourteenth Session 426, at ¶ 34 (1980) (noting that "a systematic invocation of the exceptions, substituting the forum chosen by the abductor for that of the child's residence, would lead to the collapse of the whole structure of the Convention by depriving it of the spirit of mutual confidence which is its inspiration").

## *2. Plaintiff's Objections*

### A. **Findings of Fact**

Plaintiff first challenges the Magistrate Judge's findings of fact regarding the "grave risk" exception. Plaintiff alleges that she has not had the opportunity to challenge the truthfulness of these accusations and denies the vast majority of them. This is incorrect, as the adversarial hearing conducted by the Magistrate Judge presented this very opportunity. Further,

4

Plaintiff's cursory denial of "the vast majority of the facts" is not reviewable. Her failure to object to any specific fact forces the court to defer to the Magistrate Judge's first-hand observations during the hearing. Because he alone observed the character and demeanor of the witnesses, he alone can determine issues of fact in this context. *Cf. Sealed Appellant v. Sealed Appellee*, 394 F.3d 338, 346 (5th Cir. 2004) (Whether the child would face a "grave risk" upon return to Canada "must be proved by clear and convincing evidence. This affirmative defense is necessarily a fact-intensive determination which we, as an appellate court, cannot undertake.")). Finally, Plaintiff did not object to the Magistrate Judge's extensive analysis of the relaxed, informal standard for admitting evidence and testimony under the Hague Convention. Plaintiff's failure to object to this standard further precludes our review.

**B.     Plaintiff's Objections to the Reasons for Invoking the "Grave Risk" Exception**

The Magistrate Judge supported his recommendation to apply the "grave risk" exception with six independent reasons. Plaintiff objects to all six reasons. The court will now address these objections.

**1.     The Opinion of the Children's Aid Society of Brant**

The Magistrate Judge's first reason is the opinion of the Children's Aid Society of Brant (the CASB) that J.D. should not be returned to Canada. The CASB is a Canadian agency that investigates child neglect and abuse. Magistrate Judge Waxse's report recounts seven separate incidents by Plaintiff that drew attention from the CASB. These numerous documented incidents include: (1) Plaintiff's public drunkenness with J.D. alongside; (2)

5

Plaintiff's driving with J.D. while drunk, staying away from home from 7am to 11pm or later, ignoring and not attending to J.D., and yelling at or ignoring J.D.; (3) repeated absence by J.D. from school and his answering of the telephone because he could not wake Plaintiff when school officials called his home; (4) Plaintiff's repeated intoxication while pregnant with J.D.'s younger sibling, as well as repeatedly driving under the influence while pregnant; (5) Plaintiff's inability to tell the truth, refusal to parent J.D., and overall instability, as reported by a friend listed by Plaintiff as a reference; (6) J.D.'s difficulties in school based on Plaintiff's refusal to parent him; and (7) psychological testing of Plaintiff that revealed the "situation is high-risk" because of her mood swings and depression.

The court finds that the CASB's emphatic opposition to J.D.'s return to Canada is the most pivotal factor in the analysis under the "grave risk" exception. Based on the seven incidents above, the in-house counsel for the CASB wrote a letter on May 20, 2005, to the United States Central Authority stating that the CASB opposes the return of J.D. to Canada, especially to the care of Plaintiff. This letter explains that "it is the position of the Children's Aid Society of Brant that if [J.D.] is returned to the care of [Petitioner] in Brantford, the Society would have serious protection concerns, and would apprehend [J.D.] and place him in foster care." It concludes: "It is our position that J.D.'s return to [Petitioner] in Brantford would expose [J.D.] to physical or psychological harm or otherwise place him in an intolerable position."

6

The court is bound to consider this opinion under Article 13 of the Hague Convention. As the Magistrate Judge concluded, the CASB is best situated to consider the day-to-day risks that J.D. would encounter if he were returned to Canada to await a custody hearing. Accordingly, its opinion is entitled to enormous weight, and it also undermines Plaintiff's repeated claim that this court will infringe upon Canadian sovereignty if it refuses to transfer J.D. back to Canada.

Plaintiff's objections to the reliance on the CASB's opinion are dubious. Initially, Plaintiff doubts that the in-house counsel of CASB meant to use the term "grave risk" in the precise meaning of Article 13(b) of the Hague Convention. The court disagrees. Counsel's labeling of the CASB's in-house counsel as "a layman" is unfounded. The court has no reason to question the sophistication of a Canadian attorney whose letter contains the exact, word-for-word language of Article 13(b) of the Hague Convention. The court instead draws the more logical conclusion that the CASB's in-house counsel knowingly used the language of Article 13(b) in hopes of persuading the court to invoke the Article 13(b) exception.

Plaintiff also objects because "[t]he Hague Convention does not protect a child from the exercise or failure to exercise its own powers to institute process." Plaintiff then cites two Circuit Court of Appeals cases that contradict her argument. In *Blondin v. Dubois*, 238 F.3d 153 (2nd Cir. 2001), the court affirmed the district court's proper decision to invoke the "grave risk" exception. Contrary to Plaintiff's assertion, the court in *Blondin* explicitly rejected the argument that the district court must return a child back to a situation in which the

child faces a "grave risk." *Id.* at 163 n.11. The court further rejected Plaintiff's assertion that "the best interests of the child" are not a factor in deciding whether to invoke the "grave risk" exception:

> The Hague Convention is not designed to resolve underlying custody disputes. This fact, however, does not render irrelevant any countervailing interests the child might have. According to the Explanatory Report of the Convention,
>
>> the dispositive part of the Convention contains no explicit reference to the interests of the child. . . . However, its silence on this point ought not to lead one to the conclusion that the Convention ignores the social paradigm which declares the necessity of considering the interests of children in regulating all the problems which concern them. On the contrary, right from the start the signatory States declare themselves to be firmly convinced that the interests of the children are of paramount importance in matters relating to their custody. . . .

*Id.* (internal citations omitted).

Likewise, and even more relevant to the facts of this case, the court in *Walsh v. Walsh*, 221 F.3d 204 (1st Cir. 2000), reversed the district court for not invoking the "grave risk" exception given the children's exposure to a habitually dysfunctional and dangerous parent. In reversing, the court held that "[t]he district court's legal interpretations were in error, which led to error in its application of the law to the facts. The court raised the article 13(b) bar higher than the Convention requires." *Id.* at 218. The court also stressed the necessity of the willingness to invoke the "grave risk" exception: "In the United States, the vast majority of Hague Convention petitions result in the return of children to their country of habitual residence, and rightly so. But the Convention provides for certain limited exceptions to this general rule. The clearly established facts of this case . . . lead us to conclude that this case fits within one of these." *Id.* at 222.

8

**2 and 3.        Depression, Alcoholism, Sexual Abuse, and Inability to Adjust**

The court will consider together the Magistrate Judge's second and third reasons for invoking the "grave risk" exception. It is proper to view these collectively, as they combine to form a generalized "intolerable" home life for J.D. Admittedly, none of the factors alone would spur the court to apply the "grave risk" exception, but in conjunction with all the other factors, they become legally significant. *Cf. Walsh v. Walsh*, 221 F.3d 204, 219-20 (1st Cir. 2000) (reversing the district court for not invoking the "grave risk" exception after aggregating numerous risks to find an intolerable situation).

Plaintiff's attempt to refute these conclusions consists of nothing more than citations to the general rule stating the overall purpose of the Hague Convention. The cases cited, however, do not explain when the "grave risk" exception should not be invoked. The drafters of the Hague Convention created the exception for a reason, and the court is bound to consider its use. Instead of listing general policy goals for the general rule, Plaintiff must argue under the standard for the "grave risk" exception to refute the Magistrate Judge's findings.

In the only apparent case supporting Plaintiff's position, the party arguing in favor of applying the "grave risk" exception "allege[d] nothing more than *adjustment* problems that would attend the relocation of most children." *Friedrich v. Friedrich*, 78 F.3d 1060, 1067-68 (6th Cir. 1996). There were no allegations of neglect or abuse in that case, and in fact the record showed that the petitioner offered an exemplary home life for the child. *Id*. That is not the case here. The record is filled with incidents proving that Plaintiff's home is

a dangerous and unfit place to raise a child.  Plaintiff's repeated neglect of J.D. and her emotional instability as a parent preclude any comparison between the facts of this case and the one cited by Plaintiff.

**4.       Inability to Seek Therapy and Adjust**

Plaintiff characterizes the Magistrate Judge's fourth reason as J.D.'s inability to adjust to his new surroundings.  This is not the reason advanced.  Instead, the reason is J.D.'s inability to continue therapy with his established therapist.  In fact, the very reason Plaintiff brought J.D. to the United States was the inability to access a therapist in Canada because of the year-plus delay.  Plaintiff does not allege that these delays have diminished. Further, it was Plaintiff's neglect as a parent that caused J.D.'s specific developmental disorder.  Plaintiff's assertion otherwise is unfounded.   Finally, the court may consider J.D.'s general inability to adjust to a new environment.  *See Blondin v. Dubois*, 238 F.3d 153, 165 (2nd Cir. 2001) (finding that "a district court may be presented with evidence that a child is now settled in a new environment, and such evidence may be relevant to the issue of grave risk. . . .").

**5 and 6.       Grandparents Claiming Custody and Plaintiff's Failure to Comply**

The Magistrate Judge's fifth reason for invoking the "grave risk" exception is that Plaintiff recognizes her own inability to parent J.D. based on her consent to have her parents file an application to obtain custody as grandparents of J.D.  Contrary to Plaintiff's assertion that this analysis "turns the Hague Convention on its head," the court agrees that

10

this signals an effort by Plaintiff to sidestep the CASB's attempt to remove J.D. from his neglectful home life, particularly when combined with the final reason given by the Magistrate Judge.

His sixth and final reason focuses on Plaintiff's refusal to comply with the rule of law and the probability that she will abduct J.D. if the CASB attempts to place him in foster care upon his return to Canada, as they have promised to do. The Magistrate Judge found that Plaintiff has sought to shield J.D. from the protection of the CASB. Given Plaintiff's habitual instability and her proven record of fleeing Canada with J.D. upon investigation by the CASB, the court is concerned whether J.D. can find refuge in Canada even if authorities attempt to intervene and once again rescue him from Plaintiff. Because he is comfortable in the United States and Plaintiff is the one who transferred him here, the court hesitates in ordering his return back into a volatile and neglectful home life in the custody of Plaintiff.

**C.     Discretionary Use of "Undertakings" is not Appropriate**

Plaintiff concludes her objections by arguing that even if the "grave risk" exception criteria are met, the court should nevertheless use its discretion to find a compromise involving undertakings that would allow J.D. to return to Canada. This is illogical. If Plaintiff has once before fled Canada with J.D. to avoid Canadian child protection workers, then the court must not exercise its discretion to against put J.D. at risk. *Cf. Walsh v. Walsh*, 221 F.3d 204, 221 (1st Cir. 2000) (concluding that a district court should not use its discretion to order undertakings if the petitioner has demonstrated an unwillingness to

11

comply with court orders). Finally, Plaintiff does not offer any practical way to circumvent Plaintiff's demonstrated risk of abducting J.D. from the custody of Canadian child protection workers. The court is unable to do so either.

**3.     Conclusion**

After engaging in *de novo* review of the portions of the Magistrate Judge's report to which Plaintiff objected, the court agrees with Magistrate Judge Waxse's recommendation that Plaintiff's request should be denied. Based on all the factors in their totality, the court is convinced that the "grave risk" exception applies to the facts of this case. The record reveals by clear and convincing evidence that there is a grave risk that J.D.'s return to Canada would expose him to physical or psychological harm or otherwise place him in an intolerable situation. Consequently, J.D. should not be returned to Canada to await a custody hearing, and the petition is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Petition for Return of Child to Petitioner (doc. # 1) is denied. The court hereby adopts Magistrate Judge Waxse's Report and Recommendation (doc. # 29) in full. J.D. shall remain in the physical custody of Defendant until permanent custody is resolved by the appropriate court.

**IT IS SO ORDERED** this 18th day of October, 2005.

s/ John W. Lungstrum

John W. Lungstrum

United States District Judge
